Just by way of brief background, in this case, here Mr. Bull, who is the supervisor for the Bitterroot National Forest, appeals a district court's order that denied his motion for qualified action. And in this particular case, a group of environmental associations claim that the Forest Service violated their First Amendment and other rights by barring them from a press conference that related to a project for thinning and harvesting timber. So we'll now hear argument. Good morning, Your Honors. May it please the Court. I am Matthew Collette from the U.S. Department of Justice on behalf of Supervisor Bull, Forest Supervisor for the Bitterroot National Forest. District Court in this case denied qualified immunity to Supervisor Bull on the basis of reasoning that will have broad adverse ramifications to government's ability to convey its message through the use of government speech. According to the district court, the inclusion of even a few private individuals in a government press conference converts that conference into a public forum requiring the government to permit all interested persons both to attend and speak at the press conference. Not only that, the court held that the rights in this context were clearly established such that qualified immunity is not permitted. We submit that that holding is incorrect. As we discussed in our briefs, the reasoning here would convert numerous events clearly designed to convey a governmental message into public fora. A ceremony to commemorate the victims of the World Trade Center bombings on 9-11 that included government officials that was called by the government but that had a few speakers who were family members of victims would be a public forum. You would have to then allow, say, a 9-11 conspiracy theorist to come in and state that person's views. A memorial for Holocaust victims that included a survivor, again, would have to be a public forum and you I have to say, I'm inclined to agree with you subject to hearing from argument on the other side on the point of the government's ability to control its own message, to put forward its own speakers, and not to have an obligation when it's conducting its own press conference to have people stand up, invited by the government to oppose the government. My problem with the case is different. As I read the complaint, it is at least susceptible to the following factual interpretation, that these three individuals were excluded from the past press conference and only these three individuals were excluded from the past conference. And the reason they were excluded was that the government knew that they had views contrary to what were going to be expressed. And I think I can read the complaint as saying that members of the general public, not limited to the three people who are going to speak on behalf of the government, were allowed into the press conference. If that's so, I think there's a fair argument that this was retaliation for their prior exercise of their own free speech rights and that they should, and to have a differential admission to the press conference of members of the public was a violation of the First Amendment. How would you respond to that argument? Let me make a two-part response. It is correct that you would state a violation of the Constitution if you denied access to a public event, an event available to the general public. The Sparrow case, for instance, cited, discussed in both parties' briefs, where you had an event at the Charlotte Coliseum. Valid ticket holders were not permitted to go in because of their free speech. We don't read the complaint that way, and we don't read this complaint, the facts as alleged, as clearly establishing that this was a public event that required that sort of access. Now let me hypothesize, Richard, so we're clear. Let's say that members of the general public were admitted in addition to the Is there a constitutional violation? If all members of the general public were otherwise admitted, yes. I don't say all members. Members of the general public, not limited to those who were speaking on behalf of the government. Well, I guess... I mean, all members, that's a lot of people. Right, well, if it's generally open, if you want to come and see, be my guest. I'm hesitant to concede... It was a press conference, wasn't it? Yes. So, obviously, members of the press were invited. Yes, and there's case law, of course, that says you can't... So I think Judge Fletcher's question is, suppose others besides members of the press were invited. That's right. Yeah. That is the question. Or were you, if not invited, permitted? Well, I think your argument in part depends on this not being a public forum as to who was an invitee, doesn't it? Yes, I'm hesitant to say, for instance, that if four people came and only three spoke, that that would create a public event. That's the only reason I'm hesitating here. If there were no limits or it was essentially, we'll give an invitation to the general, anyone who wants to attend, accept these people on the basis of their viewpoint. Then we, of course, would have to go back, look into whether this was a public event. Yeah, I understand why you want to read the complaint as saying, this was a press conference, the only people who were allowed to be there were members of the press and a few members of the public who were invited by the government to speak. I understand that's what you want. But there's enough in the complaint that seems to me that challenges that factual scenario. For example, when one of these three people shows up and says, I want to go in there, he's told one thing, he says, oh, that doesn't work. He's told another thing, that doesn't work. And then he's finally said, oh, well, I can't let you in. That suggests to me that if he hadn't been this particular person, no problem. He was coming in. Now, it may or may not turn out to be true. I mean, that's a factual proposition that can be tested later on. Right. But again, that was conduct by someone besides Supervisor Bull here. But I think the important thing to look at is the complaints allegation as to who the members of the public were who did get in. And at paragraph 19 of the complaint, they quote Supervisor Bull as saying, we wanted, we didn't let them in because we wanted to provide a safe environment for community members to help craft the agency's preferred alternative. The complaint goes on to say at two places, paragraph 17 and 21, that there were at least three private individuals and the government permitted these individuals to speak. It says the government let these people in to attend and speak at the press conference. All right. Now, paragraph 17 says, at least three members of the general public attended the press conference and were invited to speak. There's the word or phrase at least there. And we get the narrative in paragraph 13, Campbell arriving first, he's intercepted by Dixie Dease, if I'm pronouncing that correctly, the PR officer for the Forest Service. He says, you can't attend because it's just for the media. He says, I see people in there are not part of the media. She says, oh, that's because they're local people. And he says, well, I'm local. And then she says, but you're Campbell and you can't come in. That suggests to me that members of the general public are admitted unless their name is Campbell or the other two. Well, I think if you read the complaint as a whole, you see when she says, and again, he has not sued her. He's suing Supervisor Bull in his individual capacity here. But even if you read it that way, this is just for the media. I think that's entirely accurate in light of the process that went on here. It was for the media and for the invited guests who were there to speak. They, in fact, attempt to go outside the complaint. I don't think that is permitted. But if you do go outside the complaint and look at the letter, they... No, but sticking with the complaint for a minute, the further allegation in paragraph 21 is that the only people barred from the press conference were the plaintiffs. What does that mean? If you read that, you know, favorably to the plaintiff. And we certainly don't concede that. No, but you have to accept it for now. Taking it as... Even if that's true, the plaintiff showed up and they were barred. They were not on the program. The entire purpose of this press conference was to announce... How do we know that from the complaint? Well, the complaint, again, it says the purpose of this press conference was to announce the government's decision. And to show community support for that decision. And that's, again, paragraph 19 of the complaint. Supervisor Bohl says, yes, I brought these three people in here. I don't think it says three, but I brought these people in here to show how much community support they had. This project taps. And I wanted to provide a safe environment for the people who crafted the preferred alternative. Well, let me ask you about, you go back to 21, and maybe this is what you're sort of saying is, it says here, the press, local elected officials, and citizens in favor of the preferred alternative were all invited and allowed to attend. And then they say the only people barred. But if, just taking that allegation, that those are the only people allowed to attend, would that be permissible on the part of the government? If you read the next sentence, which says, the government gave, or defendants gave these private citizens and elected officials the opportunity to speak. Again, looking back at paragraph 19, which says, the idea here was to show the collaborative nature of this project. Take the people who helped craft that alternative and then to announce our decision. It's not much different than a congressman, for instance, who holds a press conference to announce that he is sponsoring the farm bill. And he has a couple of local farmers there who will get in front of the cameras and say what a wonderful person Congressman Schmertz is and how much his bill is going to help the family farmer. The idea, you wouldn't go to this. Thinking this was a conference that was designed to encourage a diversity of views and have a debate. I think no matter what, this remains government speech. Even if you have people coming in. Yeah, I'm reading now paragraph 19. This is Mr. Bull. Bull, it's he, but Bull. He said they were excluded because the agency wanted to provide a safe environment for community members who had helped craft the agency's preferred alternative. That's actually not saying I invited all those people because I wanted them to speak. I think what that's saying, at least it's a permissible construction of that, I didn't want people hostile to this in the room. And I would have other people in the room who were in favor of it. They could come whether they spoke or not. But I wanted them to feel, quote, safe. I think it gives a key indication as to who these people were. They were people who helped craft the agency alternative, who were invited to come and speak to show that this project had public support. I don't think it converts this into a public forum. And even if it were a public event, it wouldn't change the fact that this is government speech. That's a different question that I've put off the table for the time being. Focusing on me seems more troublesome. I do want to emphasize that. But I will say if the court does read the complaint as saying this was an open public event, and you can conclude that under the facts as alleged, it was clearly established that this is the type of public event, such as Sparrow, that you would have to remain. What did the district court conclude on that score? That it was an open public event or not? District court didn't distinguish between the right to speak and the right to attend. The plaintiffs seem to have backed off on the right to speak claim, although they continue to argue this is a public forum, which would mean you would have to provide the right to speak. The court merely said, this is a public forum. You allow these private speakers in here. They were able to speak. They're not part of the government, and therefore it's a public forum. The district court then said it's clearly established because the right to viewpoint neutrality in a public forum is clearly established. Let me ask you this, and I'm not asking you now to agree, because I understand you want to contest how broadly the complaint could be read. So I'm not asking you to concede how the complaint could be read. I appreciate that. But on the assumption that the complaint can be read, and then the facts can be established, on the assumption that members of the public were allowed in there, unless they were Mr. Campbell or the two others, number one, is that a violation of the First Amendment? Yes. Number two, is it such a clear violation of the First Amendment that there's no qualified immunity? Yes, if it's a public event. Don't give me your qualifier if it's a public event. I gave you the facts. Yes, that's right. And on those facts, you say it's not only a violation, but there's no qualified immunity. Yes, if the court reads the complaint as saying this was a public event, anyone could come in but us. You know, I'm staying away from the word public event. I may get there, but what I'm saying is members of the public were allowed to come into this event unless their names were Campbell and the other two names. Yes. You're saying it's a First Amendment violation. I think Judge Fletcher is saying, if that's true under the second prong of the qualified immunity analysis, was it so well established that it would strip Mr. Bull of qualified immunity? And your answer is? It actually was yes, but it doesn't have to stay yes. What's your answer now? Because it's going to depend on how the court reads the facts as alleged, because qualified immunity analysis, of course, requires the officer to know, or whether a reasonable officer would know, that under these particular facts, what he's doing violates the Constitution. One of the facts, as said, which is essentially any member of the public could come in except for the ones they disagreed with, then yes, that would state a violation. What the court would have to do, again, I think our government speech argument, the right to speak. There are two questions. One is, would it state a violation you've said yes? Number two, is it such a violation that there's no qualified immunity for Mr. Bull on those facts? Yes, excluding a person from a public event. I'd like to use that term because that's what the case law does. I think we have your view. And if the court read the complaint that way, the correct result would be to reverse the decision about the right to speak and the government speech analysis to remand, and we would hope for a limited discovery on, essentially, whether this was a public event, whether the people invited. When you say public event, you mean that the government made this into a public forum or something else? Not a public forum because... What do you mean by public event? What does that mean in terms of the First Amendment? You could imagine a speech by a public official at an auditorium such as this one, where everything the official said would be government speech. He'd be speaking in his official capacity. But attendance at the event is not limited. Anyone who wants to come and hear the government official can get in and come and see it. If you exclude somebody on the basis of viewpoint, you're denying a government benefit, essentially. You're denying access on the basis of viewpoint. So, for example, we couldn't keep out all the Seattle University law students here? Exactly. I would, of course, prefer to have only the ones who share my viewpoint in this case. You couldn't do that. If, on the other hand, you were coming here to announce a decision, probably not a good context, and there was some private collaboration, and you said, and, of course, we're going to bring the people who helped us craft the decision. Or say it's a government contractor. You're announcing a government contract, and you've got the folks from Boeing with you who are, as part of this press conference, going to say, oh, yes, we got this contract, and we're going to work hard to build the government planes. The fact that everyone from Boeing, who happens to be part of the contract team, doesn't actually speak, doesn't answer the question of access. All right. Do you want to say the remaining time? Yes, I would like to. Thank you. May that work? I'll look at that line up there. May it please the court, my name is Kim Wilson. I'm here today representing the plaintiffs. I have with me today Betsy Griffin, who's co-counsel. She's attorney for Montana ACLU. Thank you for the opportunity for appearing today, and I do appreciate the opportunity to appear in this lovely law school. It's a beautiful building. This case is about the government excluding people from a designated public forum simply because it doesn't like their views, didn't agree with their views. And I think that the quote from the Supreme Court and the issue that I think totally crystallizes this case comes from the Lamb's Chapel case.  the First Amendment forbids the government to regulate speech in a way that favors some viewpoints at the expense of others. And I think... Is that what you're conveying? That your speech was regulated? Is that your claim in this case? Yes, it is, Your Honor. And that... So you're claiming abridgement of your own right to speak at this event, we'll call it. At this event. So, okay, just because there was some confusion about that. I just want to under... I thought it was the attendance, but you're claiming that your client should have also had a right to comment or speak. And I think I would focus on the comment part. I think the issue... Unless you're saying to say something. Yes, to say something. So you're saying that under the First Amendment, your clients had a right to say something at the press conference. And they were deprived of the ability to get into the press conference because of what they might say. And that's that... That's different now. Deprived of the right to get in the press conference is different from the right to speak, isn't it? Well, I don't think you can get to the speaking part if you can't get in the door in the first place. And that's where the facts that we've got in front of us are that they were excluded from this meeting, this press conference, whatever you want to call it, because of what they might say. And I think the complaint's pretty clear about that. But there's kind of two aspects to it. What if they were let in, but they were told you can't talk because this is a government press conference and we also have the citizens who helped us out, but you can't say anything. Your claim is they would have a right to say something. Well, I think if this is a public forum of some sort... Well, yeah, I mean, but before you get into that, would they have a right to say something? Is that part of your claim? I think they would have a right to say something, whether they would have the right to as the defense or as the Forest Service has said, you know, somehow commandeer the press conference. I don't think so. But the question, I think the real threshold question here is whether this was government speech to begin with. And I think that, yes, the government can utilize private speakers to help convey its message. And in this case, the message was the release of this final EIS. And I want to point out one kind of factual thing here, kind of a twist in this, is that this was the release of the EIS. The actual final decision on this EIS came months later. So the government was simply announcing, here's our EIS environmental impact statement. Here's our preferred alternative. So the process was ongoing still. Is it fair to characterize your complaint? Because this was on a motion to dismiss. Characterize your complaint as characterizing this event as a government press conference? That seems to be the way Judge Malloy believed it, right? Did you contest that view he had? No, I think that's what it is. And again, the government speech doctrine, it's one thing when the government alone is speaking, and that's part of the government speech doctrine. I think what happens, though, when you start bringing private parties in to speak on behalf of the government, I think that the cases say that that demands a little more heightened scrutiny here. You're saying if President Bush decides to have a conference, I mean, a press conference announcing an economic stimulus package, and he invites the Boeing Company and General Electric and six farmers to come and talk about this is a great thing for America, and there's six people who don't think it's such a great thing, those six people have a First Amendment right to attend? Well, I think... And speak. And speak. I think, Your Honor, that that situation is distinct from the specific factual situation we have here. And what I would point you to is... Well, why don't you answer my question first. Would, in your view, given your theory of the case, would those individuals have a right to attend and speak? I think they would have a right to attend. And that's what I'm saying. I think as soon as the government starts enlisting private parties in a conveying a message where there's more than one side to that message, it becomes a much more problematic theory. And in this case, though, Your Honor, if you look at paragraph 12 of the complaint, what my folks say is that they had attended prior press conferences, public meetings, or meetings and public events in that office before. So you have... What's that have to do with anything? I mean, this one is what it is. I mean, maybe this is a different... We don't know from that allegation. We really don't know anything from that allegation. So the situation is this. If the Forest Service wants to have a press conference touting what it's done and having three people come in and agree with it and say why that's great stuff, why isn't that government-sponsored speech? Because they're basically using the private individuals to also give their message. Well, I think the problem is that, yes, they're using or trying to use the private individuals to convey their message, but what the complaint makes clear is it's not the government's message that these private individuals were conveying. It's the private individual's message that the private individuals were asked to come and convey. And I think... I don't think that's clear at all from the complaint. I think quite the opposite is clear, that the government put these people on because it knew exactly what they were going to say. It might, of course, have been their private opinion, but the reason the government put them on was their private opinion supported what the government wanted. Just as the government knew exactly what my folks would have said had they gotten in the door. And I think that we don't have a situation, at least based on the pleadings here, like the Johans case, where the government had control over the script and basically wrote what was going to be said. And I think that if you construe the Supervisor Bull's statement in our favor, where he's saying, you know, A, we wanted to create this safe environment for these people, and we wanted to show this broad-based community support. You know, community support, that is those individuals saying what they think of this thing. So, and I realize, Your Honors, that that's, you know, yes, there's case law that says government can kind of compile views and all this stuff. But it seems to me that here, what he was doing was what Lamb's Chapel says you can't do. He was facilitating or favoring this speech at the expense, literally, of this speech over here. Now, speaking only for myself and not my fellow panel members, I have to say that the argument you've been trying to make is uphill work for me. That is to say, as I read the law, the government is entitled at its own press conference to control the message that is given out by its own speakers, whether those speakers are government employees or private persons enlisted by the government to speak on the government's behalf with a viewpoint that the government wishes to express. And if that's the only thing that's going on in that press conference, the government has every right to exclude someone who has a contrary point of view from speaking. Now, there might come a point at which the government in one of those events would then say, are there questions from anyone? Okay, that's a different question. But if the government says, this is a press conference, we're not going to take questions, we're just going to tell you what we say, I think your clients lose. Now, as you can tell from my questions before, I think you may have a better cause of action if there are members of the public admitted to that event who did not have speaking parts. And the only criterion that was relevant to what members of the public were or were not allowed was, is your name Mr. Campbell? Or are you one of the three that we know oppose? Well, then that's a different case. Do you want us to read the complaint as saying that there are members of the public invited or allowed into that event who were not speakers on behalf of the government? We believe that's the case. And yes, I think the complaint can be read that way. Where? In paragraph, excuse me, Your Honor. 17, several members of the media were in attendance at the press conference. In addition, there were several elected officials. Finally, at least three members of the general public attended the press conference. At least three members of the general public and were invited to speak to the media. And then again, in paragraph 21, which the Forest Service attorney has pointed out, the press local elected officials and citizens in favor of the preferred alternative were all invited and allowed to attend. Defendants gave these private citizens and the elected public officials the opportunity at the press conference to speak and address the public. Okay, so there, we basically say that everyone who had supported the preferred alternative was permitted to talk or given the opportunity to talk. So it kind of boils down to the term at least. I mean, that's, I mean, if I read this, I mean, Judge Fletcher gave you kind of a softball question of like the broadest possible reading. But if you really are looking at it, to sustain your view, we would have to focus on the word at least three. And that would be the nut of your case, right? Well, I think that that's true. And again, and also I think in looking at 21 opportunity, we don't know because we weren't able to do discovery, you know, whether that opportunity, whether people actually spoke, who spoke at the press conference or not. Assuming this is a, as you characterize it, you know, a government press conference with invited elected officials and private parties, what's the best case that supports your position that your clients, one, had a right to be there and maybe even the right to speak? What's your strongest case? Well, I think again that Lamb's Chapel case is very much on point. In that case, it was a church wanted to use, I believe it was a school facility. And there were certain topics that were allowed, but the church group wanted to speak on a particular topic. But because of their religious viewpoint, they weren't allowed. And I think the Ninth Circuit's case, the Hopper versus City of Pasco is quite similar. There, the city set up a public art project in the city hall, City Hall of Pasco. Had in the past allowed in some art that was controversial. But then when the plaintiffs in that case tried to exhibit their art, they weren't allowed. And what the court in Hopper focused on was the consistent application of those restrictions. And in this case, in paragraph 12 of the complaint, what we're saying is in the past, they've gone in to press conferences, they've gone into public meetings. And this is a public building and they've been able to do that. And I think if you look at Hopper and that consistent application and kind of the flip side of the consistent application is selective enforcement. And are you selectively enforcing restrictions in order to suppress a certain view? And here, I think, going to that quote from Lamb's Chapel, you know, we've got really got two things going on. We were favoring one speaker, but we're also doing it at the expense, at the expense of the other one, at the expense of Mr. Bramborg and Mr. Campbell and Mr. Miller who were kept out. Well, let me ask you if your speech right to talk claim or separated from your right to attend claim, the failure to be permitted to attend one press conference, what is the alleged harm? Well, in this case, I think the alleged harm is this was the culmination of the NEPA process, the release of the EIS. That NEPA process had, the Forest Service had actually evaluated one of the, as an alternative what my clients had put forward as a proposal. And what they've alleged in the complaint, their harm in that regard was that, you know, they weren't able to be there. And whether in that context or after the meeting to be able to defend their proposal against whatever it is that the government... So now you're back to them being able to talk. Well... I'm just trying to understand. Right. And I guess in some respects, I don't see how the right to attend or to get in the door is too far different from the right to talk. I mean, I think that... Well, they're two really different things. We don't let anyone besides you and us talk today. The students don't get to talk until they ask questions. So there is a difference between attending and talking. Well, and I think, I mean, I do think there's support for kind of the general right to attend. Okay, but let me just go back to my question. What would be the injury? For them not to hear what was being said at the press conference. Okay. Quite simply. And, you know, maybe it's not a big injury, but that's the injury. And I think, you know, the idea that viewpoint discrimination is prohibited is, you know, broad. That's a principle that's found in, you know, countless cases. No, but the viewpoint discrimination goes to, you know, the right to speak, not the right to attend, doesn't it? That's correct, Your Honor. But in this case, it was because of their viewpoint that they were kept out to begin with. And, you know, so what would have happened had they gotten in? I'm not sure. I would point out, I think it's the Galvin case where the Ninth Circuit said, in a different context, in a kind of demonstrations context, that the government can't prophylactically, you know, take action to suppress speech. And in this case, we've got, you know, these three longtime conservationists who've been actively involved in this stuff for years, including Mr. Bramborg, who's 80 some odd years old. We know from the complaint that there were armed Forest Service guards in the room in the building. And had they made it into the room and, you know, for whatever reason, created a disturbance, then the Forest Service could certainly have escorted them out at that point. But it was the prophylactic, you know, keep them out to begin with, as Judge McEwen or Judge Fletcher pointed out, that I think is the problem here. Do you have a retaliation claim here too? I'm trying to read your complaint. The closest I can get is the word penalized. Do you mean retaliation or not? Not per se, Your Honor. I mean, I think that's essentially what, in layman's terms, that's probably what was going on here to some extent. But we didn't specify that in the complaint. But anyway, Your Honors, I think that just to summarize, you know, we think that the question of government speech is certainly going to depend on the factual circumstances. And in this case, given the history, given the open NEPA process, given the lack of scripting or lack of any evidence of scripting by the government, we do not believe this falls into the government speech box. And therefore, you get to the First Amendment claim. We think the First Amendment is clear that you cannot discriminate based on viewpoint. We think that that principle is clearly established in many contexts, and that Judge Molloy was absolutely correct. And I will close early on that point. Thank you. Thank you. About a minute and a half. I must admit to being a bit puzzled because I read their brief as essentially disavowing the right to speak claim, repeatedly mentioning, we don't care so much about the right to speak. It's all about the right to attend. I would reiterate that we think this is very clearly government speech, given the stated purpose of this conference, which is to announce a decision and to show public support. One final point on that, with regard to the NEPA process, Mr. Wilson mentioned that it hadn't been completed yet, but the public comment period had closed. So I don't think the court should suffer under the misimpression that the NEPA process required anything further. And in fact, this court in the Wild West case held exactly the opposite with respect to this exact press conference  Counsel also mentioned they hadn't had a chance for discovery. They did, however, submit a letter that Mr. Bull had sent to Senator Baucus. And at times they have relied on it here. That's at 14 to 16 of the administrative record of the excerpts of record. Again, I don't think you're necessarily permitted or even allowed to go outside the complaint. But in fact, if you read that in context and read the entire submission, that makes it very clear that this was not a public event. Media only were invited and it wasn't designed as a public meeting. And in fact, Supervisor Bull invited specific people to speak at the press conference. Again, it's not in the complaint. If a remand is required, I think we could essentially move for summary judgment very quickly. And any discovery which should be limited simply to the question of was the general public invited to this? One final point on clearly established. We cited two cases from the 7th and 10th circuits that make the exact point that a district court is wrong when it just says viewpoint neutrality in a public forum is clearly established. First, you have to find out whether it's a public forum or not. And that has to be clearly established under the facts as alleged. We don't think that either the right to speak or the right to attend was clearly established and that Mr. Bull is therefore entitled to qualified immunity. Thank you. Thank you. Thank both counsel for your arguments this morning. The case of Brandenburg versus Bull is submitted.
judges: Tashima, McKeown, Fletcher